JLT/RCP/MLS-**13759.C5F9**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATASHA DILLARD, Administrator of the Estate of NADINE DILLARD, DECEASED, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| | ) | |
| BLUE ISLAND SLF, LLC d/b/a PRAIRIE GREEN AT FAY'S POINT, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF REMOVAL</u>

NOW COMES Defendant, BLUE ISLAND SLF, LLC d/b/a PRAIRIE GREEN AT FAY'S POINT, by and through its attorneys, CARDEN & TRACY, and states for its Petition to Remove the above-captioned action currently pending in the Circuit Court of Cook County, No. 2022 L 003739, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1446, and 42 U.S.C. §§ 247d-6d & 247d-6e.

## I.   <u>INTRODUCTION</u>

1.    Plaintiff's Complaint, on its face, alleges claims arising from the manner in which the Facility administered its COVID-19 countermeasure infection control program, including protocols for COVID-19 screening and testing that incorporate the use, administration and allocation of personal protective equipment ("PPE") and other COVID-19 countermeasures, within the facility. This Court has original federal question jurisdiction because the claims are subject to complete preemption under the Public

Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. § 247d-6d(d), and supplemental jurisdiction over all remaining claims.[1]

## II. PROCEDURAL REQUIREMENTS

2.      On April 22, 2022, Plaintiff filed her Complaint at Law in the Circuit Court of Cook County, State of Illinois, as Civil Action No. 2022 L 003739 ("Complaint"). (**Exhibit 1**).

3.      **Jurisdiction**: This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Complaint arises under federal law that is completely preemptive by virtue of the PREP Act, 42 U.S.C. § 247d-6d(d). This Court has supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367. In addition, federal embedded jurisdiction and federal officer removal jurisdiction exists here.

4.      **Timeliness of Removal**: The Complaint was served on Defendant on May 20, 2022. Accordingly, this Notice of Removal is timely filed within the thirty-day time period prescribed by 28 U.S.C. § 1446(b)(3).

---

[1] A mandate has not yet issued in *Martin v. Peterson Health Operations*, 2022 WL 2154870 (7th Cir. June 15, 2022), and, upon information and belief, the defendants in that case may be seeking a rehearing by the full en banc Court of Appeals. However, *Martin* 's holding regarding the applicability of federal officer removal jurisdiction is not applicable here as the defendant in *Martin* was a nursing home "subject to extensive federal regulation" (*id.*, *1), while Prairie Green is a senior assisted living community that is **not** regulated by the federal government. Only during the period of the COVID-19 Declaration was Prairie Green directed and controlled by the HHS AHJ structure as a federal program planner and a countermeasure location/facility. *Martin* does not address these issues – namely, the federal government's control of assisted living facilities (ALFs) through AHJ directives during the pandemic. As to the Panel's finding that *Grable* jurisdiction did not exist in *Martin* based on the particulars of that case, the Panel's reasoning is not applicable here in view of the allegations pled in this case by Plaintiff which most certainly implicate the PREP Act, as set forth herein. *Martin*, at *2, also conflates the *scope* of claims completely preempted by the PREP Act with the *elements* of PREP Act litigation. *Martin's* conflation defies *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-209, 215-16 (2004), and improperly avoids statutorily required removal jurisdiction. *Compare* §247d-6d(a)(1) ("all claims for loss"), *with id.* (d)(1) (elements of "exclusive Federal cause of action"); *see also id.* (e)(5) (only D.D.C. can rule on cognizability of claims).

5.      **Venue**: Venue is proper in the United States District for the Northern District of Illinois under 28 U.S.C. § 1441(a) because the State Court where the case has been pending is located within this District.

6.      **Notice**: A copy of this Notice of Removal is being filed contemporaneously with the Circuit Court of Cook County, Illinois, to be served upon all parties in accordance with 42 U.S.C. § 1446(d).

7.      Copies of all required pleadings, process, and orders are appended hereto in accordance with 28 U.S.C. § 1446(a).

## III.     FEDERAL QUESTION JURISDICTION EXISTS AS THERE ARE SIGNIFICANT FEDERAL ISSUES CENTRAL TO RESOLUTION THAT ARISE UNDER FEDERAL LAW.

8.      Embedded federal question jurisdiction allows federal courts to hear claims "recognized under state law that nonetheless turn on substantial questions of federal law" so to promote uniformity and federal interests by having federal courts resolve key questions of federal statutory interpretation. *Grable & Sons Metal Products, Inc., v. Dame Engineering & Mfg.,* 545 U.S. 308, 312 (2005).

9.      A plaintiff's complaint presents an embedded federal issue supporting federal-question jurisdiction if it raises a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258 (2013).

10.     Plaintiff's claims against Defendant include claims for common law negligence and willful and wanton misconduct under the PREP Act. Each cause of action

is based on Plaintiff's underlying theory that Defendant failed to exercise ordinary care to keep the premises safe by not sufficiently allocating, using and enforcing the administration and use of countermeasures designed to prevent the spread of COVID-19 while Ms. Dillard was a resident of the Facility, including the use, distribution and administration of respiratory protective devices. As referenced in Plaintiff's Complaint, the precautions at issue concern in part Defendant's use of PPE, tests, sanitizers, and other countermeasures designed to prevent or mitigate the spread of COVID-19. These are the precise respiratory protective devices and other countermeasures referenced in the PREP Act Declaration (including its amendments) issued to address the COVID-19 pandemic.

11.     An advisory opinion was issued by the Department of Health & Human Services ("HHS") on January 8, 2021. That opinion explains that cases arising out of a nursing home or other healthcare facilities' alleged failure to provide its staff with PPE raises federal questions for removal from state courts. Notably the opinion states, "even in the absences of a claim arising under federal law, 'a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law.'" It further opines, "here, ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court."

12.     Federal jurisdiction thus exists under the *Grable* doctrine because Plaintiff's claims integrate substantial issues of disputed federal law which must necessarily be resolved to determine Plaintiff's right to relief, if any.

## IV.  PLAINTIFF'S CLAIMS ARE COMPLETELY PREEMPTED UNDER THE PREP ACT.

13.     Plaintiff asserts claims relating to care provided to Nadine Dillard while a resident of Blue Island SLF, LLC d/b/a Prairie Green at Fay's Point ("Facility"), a skilled nursing and rehabilitation facility, during the COVID-19 pandemic.

14.     The Complaint asserts that the Decedent contracted COVID-19 and died on April 27, 2020, because of the manner in which the Facility administered its COVID-19 countermeasure program, including how it allocated, used, and administered COVID-19 countermeasures within the meaning of the PREP Act. 42 U.S.C. § 247d-6d.

15.     The Complaint alleges that the Facility's conduct was willful and reckless with respect to the Facility's use and administration of COVID-19 countermeasures as part of COVID-19 countermeasure infection control program, including the manner in which it administered and allocated, *inter alia*, countermeasures such as thermometers for temperature screening, COVID-19 diagnostic testing, sanitizers for disinfectants. *See, e.g.*, Compl. ¶¶ 25, 28(a)-(l), 45-46.

16.     The PREP Act creates immunity from suit and liability for the following countermeasures:

- A qualified pandemic or epidemic product;

- A security countermeasure;

- An approved drug, biological product, or device used pursuant to Federal law in conditions that are in consistent with its approval ; or

- An unapproved drug, biological product, or device, or an approved drug, biological product, or device intended for an unapproved use, that is intended for emergency use and

5

127630538v.1

> shipped and held by a government agency or someone working on that agency's behalf for use only when that use is authorized.

17.    Per Congressional directive, immunity from suit and liability under the PREP Act becomes available when the Secretary of the HHS issues a Declaration, beginning on the effective date or other triggering event stated in the Declaration. Congress instructs that the Secretary defines the scope of the Act, including what acts and omissions fall thereunder. *See also Estate of Maglioli v. Alliance HC Holdings LLC,* 16 F.4th 393, 400 (3d Cir. 2021).

18.    In response to the COVID-19 pandemic, the PREP Act was invoked on March 17, 2020, when the HHS Secretary declared a public health emergency triggering the immunity provisions and other protections under the PREP Act, retroactively effective as of February 4, 2020. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, Fed. Reg. 15, 198 (3/17/20), amended by 85 Fed. Reg. 21,012 (Apr. 15, 2020), 85 Fed. Reg. 35,100 (6/8/20), 85 Fed. Reg. 52,136 (8/24/20), 85 Fed. Reg. 79190 (12/3/20), 85 Fed. Reg. 78,72 (2/2/21, corrected 2/22/21), and 86 Fed. Reg. 9516-9517 (2/16/21, corrected 2/21/21), 86 Fed. Reg. 14462-14463 (Mar. 16, 2021).

19.    The Secretary's Declaration recommended a series of covered countermeasures, broadly defined as:

> any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19," or its transmission.

*See id.*

6

20. Through ten amendments to the Declaration that span two presidential administrations, the Secretary further expanded and clarified the scope of covered persons and COVID-19 countermeasures subject to the immunity to meet the changing landscape of the pandemic.

21. For example, on June 8, 2020, the Secretary's Second Amendment, clarified that the broad scope of qualified countermeasures includes products "*that limit the harm that COVID-19 might otherwise cause*," even those that were developed for purposes other than COVID-19. *See* 85 Fed. Reg. 35,101.

22. On December 9, 2020, the HHS Secretary issued the Fourth Amendment, confirming (in accordance with the authority bestowed upon him by Congress) that the PREP Act can apply not only to the physical administration of countermeasures, but also to activities relating to the management and operation of a countermeasures program - including decisions concerning the prioritization or allocation of a covered countermeasures. *See* 85 Fed. Reg. 79,197.

23. The PREP Act thus applies to the claims for loss alleged in the Complaint relating to the allocation, use and administration of countermeasures in the Facility, including the Facility's management and operation of its COVID-19 countermeasure program.

24. In addition, Plaintiff's claim for "Willful and Wanton Misconduct" unambiguously fall within the PREP Act's exclusive federal cause of action for willful misconduct, and thus, such claim is properly removed to federal court on the grounds of complete preemption. *See Maglioli*, 16 F.4th at 409.

7

127630538v.1

25.     The PREP Act applies to "covered persons" that are engaged in recommended activities by using and administering "covered countermeasures" – including COVID-19 countermeasure program planning -- during a national emergency, such as the COVID-19 pandemic. 42 U.S.C. § 247d-6d.

26.     The Facility is a "Covered Person" that enacted Covered Countermeasures.

27.     As the licensed operator of a skilled nursing and rehabilitation facility, Defendant is a "covered person" under the PREP Act. *See* 42 U.S.C. § 247d-6d(i)(2); Advisory Opinion on the PREP Act (4/17/20), as modified on 5/19/20 (Advisory Op. 20-04), available at https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf.

28.     Specifically, Defendant is a "covered person" because it meets the requirements of a "program planner" and employs "qualified persons who prescribed, administered or dispensed" countermeasures under the PREP Act.

29.     The Facility employed "qualified persons," which the PREP Act defines as:

> [A] licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed[.] 40 U.S.C. § 247d-6d(i)(2)(B).

30.     The Facility is also a "program planner," which is defined as:

> [A program planner:] supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of . . . a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplies technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with [the Secretary's declaration]. 40 U.S.C. § 247d-6d(i)(6). As the Secretary's Declaration confirmed, a "private sector employer or

8

> community group or other 'person' can be a program planner when it carries out the described activities. 85 Fed. Reg. at 15,202.

31.     On August 31, 2020, the Secretary confirmed that that nursing facilities should be deemed as "qualified persons:

> Therefore, as an Authority Having Jurisdiction under the Secretary's March 10, 2020 declaration under the Public Readiness and Emergency Preparedness Act (PREP Act),5 Assistant Secretary for Health, Admiral Brett P. Giroir, M.D., extends coverage under the PREP Act to licensed health-care practitioners prescribing or administering point-of-care COVID-19 tests, using anterior nares specimen collection or self-collection, for screening in congregate facilities across the Nation. Such tests must be authorized, approved, or cleared by the FDA (collectively, FDA-authorized COVID-19 tests).

32.     Additionally, the Facility administered covered countermeasures, as referenced in the Complaint, including the use and allocation of PPE, COVID testing, thermometers, sanitizers, and other items qualifying as pandemic or epidemic products -- which, at that time, were virtually the only countermeasures that existed to mitigate the spread of the COVID-19 virus. Such individuals also developed, administered, managed and oversaw policies and procedures that comprised the Facility's COVID-19 countermeasure infection control program.

33.     The definition of "covered countermeasures" extends to broad categories of products, including (1) any devices approved by the FDA, (2) any products subject to Emergency Use Authorizations ("EUAs"), (3) as well as personal protective equipment (PPE"), (4)COVID-19 diagnostic kits, (5) and others. 42 U.S.C. § 247d-6d(i)(1); 85 Fed. Reg. 15,198-203 (Mar. 17, 2020).

9

34. Specifically, the Secretary's March 17, 2020, Declaration defined the categories of "covered countermeasures" to include any diagnostic or other device "used to treat, diagnose, cure, prevent, or mitigate COVID-19" or its spread. 85 Fed. Reg. 15,202.

35. The Declaration was subsequently amended to specifically add respiratory protective devices, like N95 masks, to the list of covered countermeasures. *See* 85 Fed. Reg. at 21,014.

36. On June 4, 2020, the Secretary further amended the Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. *See* 85 Fed. Reg. 35,100 (June 8, 2020).

37. Defendant was acting specifically at the direction and under the supervision of the United States government with respect to various countermeasures implemented to prevent and treat the COVID-19 virus, including following evolving and specific guidelines from CMS and the CDC with respect to: 1) infection control policies and procedures; 2) PPE procurement; 3) PPE allocation; 4) admission and discharge of residents; 5) managing visitors and outside persons 6) staffing allocation and retention; 7) isolation protocols and management, among multiple additional directives.

38. Overall, Plaintiff criticizes the way the Facility used countermeasure equipment, such as pulse oximeters to obtain vital signs in connection with monitoring for COVID-19, as well as its decisions as to who was allocated PPE and how it should have been used. In addition, Plaintiff attacks the Facility's decisions to re-use the scarce PPE that it had and the way it used sanitizers and disinfectants at the Facility as well as the

10

manner in which it instructed staff's use of these scarce countermeasures. In sum, Plaintiff disagrees with the manner in which the Facility managed and operated its COVID-19 countermeasure program at the start of the pandemic, including how it used the scarce countermeasure resources that it administered in an effort to mitigate the spread of the virus at the Facility. *See,* Compl. ¶ 28.

39. Advisory Opinion 21-01 explained the Act's "relating to" language relied upon by the Amendment in extending immunity "to *anything* 'relating to' the administration of a covered countermeasure," including decisions as to when and how to administer countermeasures which may encompass a conscious choice not to use or allocate a countermeasure at a given time so as to conserve resources or comply with ever-changing health guidance and directives as well as any decision to re-use countermeasures. (emphasis added). Exhibit 2.

40. Because the Facility acted in its statutory role as a program planner in making reasonable choices to allocate and prioritize covered countermeasures, such as diagnostic testing, disinfectants, and PPE, these actions and any purported omissions alleged in the Complaint constitute clear examples of "program planning" and the administration and use of covered countermeasures under the PREP Act.

41. Moreover, Defendant's employees and affiliates were acting as "qualified persons" under 42 U.S.C. § 247d-6d, as individuals authorized to administer, deliver, and use FDA-covered countermeasures, such as PPE, disinfectants and sanitizers, pulse oximeters, and FDA-approved COVID-19 diagnostic tests and devices, used to diagnose

11

and prevent COVID-19 or the transmission of SARS-CoV-2 or a virus mutating therefrom. *See* 40 U.S.C. § 247d-6d(i)(2)(B); Advisory Op. 20-04. 3.

42. The PREP Act:

> applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the . . . distribution . . . purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure."

42 U.S.C. § 247d-6d(a)(2)(B).

43. While the PREP Act does not define the term "administration," Congress leaves to the HHS Secretary to "provide relevant considerations in the Declaration." Fed. Reg. at 15,200. 51. The Secretary's May 17, 2020 Declaration established that administration of a Covered Countermeasure includes:

> physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures."

85 Fed. Reg. at 15,200.

44. Thus, the definition of "administration" extends not only to the physical provision of countermeasures to recipients, but also "to activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to countermeasure activities." *Id.* (emphasis added). Likewise, the PREP Act may be triggered by claims related to covered persons' alleged inaction with respect to covered countermeasures.

12

45.     The Fourth Amendment to the implementing Declaration confirms that inaction can be covered by the PREP Act's immunity provisions, particularly when it relates to conscious decision-making in the administration of a COVID-19 countermeasure infection control program. Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d . . . [such as] when [t]he person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections. 85 Fed. Reg. 71,190 (Dec. 9, 2020).

46.     The Secretary's definition of "administration" is consistent with the plain statutory language of the PREP Act, which addresses both "*acts and omissions*." 42 U.S.C. § 247d-6d(c)(4) (emphasis added). *Maglioli,* 16 F. 4th 393 at 400 (3d Cir. 2021).

47.     Significantly, the PREP Act specifically refers to the "actions or omissions by a covered person," when defining the immunity exception and federal cause of action for "willful misconduct." *Id.* § 247d-6d(c)(2)(A) (emphasis added); *see also* § 247d-6d(c)(1)(A).

48.     The Office of General Counsel's subsequent Advisory Opinion, 21-01,[2] likewise rejects the notion that the PREP Act requires the actual "use" of a covered countermeasure, providing that "this 'black and white' view clashes with the plain language of the PREP Act, which extends to anything 'relating to' the administration of a covered countermeasure." *See* Advisory Op. 21-01 (Jan. 8, 2021), at 3, available at hhs.gov/guidance/sites/default/files/hhs-guidancedocuments/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-finalhhs-web_2.pdf.

49.     Advisory Opinion 21-01 explains:

> "There can potentially be other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure. . . . Decision-making that leads to the non-use of countermeasures by certain individuals is the gist of program planning, and is expressly covered by PREP Act." *Id.* at 4 (emphasis added).

50.     In *Maglioli*, the Third Circuit recently confirmed that Congress delegated controlling authority to the HHS Secretary to define the scope of the PREP Act, as well as

---

[2] By way of the Fourth Amended Declaration, the Secretary incorporated all Advisory Opinions regarding the PREP Act into the Declaration so that the Advisory Opinions now carry the same force and effect as the Declaration itself. Specifically, the Fourth Amendment to the Declaration "clarifies that the Declaration must be construed in accordance with the Department of Public Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on Public Readiness and Emergency Preparedness Act and the Declaration (Advisory Opinions). The Declaration incorporates the Advisory Opinions for that Purpose. *See, e.g.,*Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration under the Act, Apr. 17, 2020, as Modified on May 19, 2020, available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-advisory-opinion-hhs-ogc.pdf (last visited Dec. 1, 2020); Advisory Opinion 20-02 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, May 19, 2020, available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/advisory-opinion-20-02-hhs-ogc-prep-act.pdf (last visited Dec. 1, 2020); Advisory Opinion 20-03 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, Oct. 22, 2020, as Modified on Oct. 23, 2020, available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO3.1.2_Updated_FINAL_SIGNED_10.23.20.pdf (last visited Dec. 1, 2020); Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, Oct. 22, 2020, as Modified on Oct. 23, 2020, available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf (last visited Dec. 1, 2020).

the "acts or omissions" that fall thereunder, as HHS has done in its implementing Declaration, amendments thereto, and its Advisory Opinions. *See Maglioli*, 16 F.4th at 401.

51.     Advisory Opinion 21-01 also confirms HHS's interpretation that the PREP Act should be construed broadly, noting that it should be a rare instance in which a plaintiff may avoid federal preemption by pleading "that defendant's culpability is the result of its failure to make any decisions whatsoever." In that regard, the Advisory Opinion highlights the legal principle that "federal courts are free to entertain discovery to ascertain, for jurisdictional purposes, the facts underlying the complaint." *Id.* at 4 (citing *United Surgical Assistants v. Aetna Life Ins. Co.*, 2014 WL 4059889, at *1 (M.D. Fla. Aug. 14, 2014) (allowing jurisdiction discovery on whether plaintiff's claim was completely preempted by ERISA)); *see also In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on disputed fact ).

52.     Guidelines to address the pandemic were frequently updated to adjust to rapid developments during the pandemic in an effort to limit the transmission and spread of COVID-19.

53.     As the pandemic continued, the Facility's efforts to mitigate community spread of the virus evolved. The Facility took proactive steps to procure and allocate the PPE equipment, including N95 masks and gowns, as well as other countermeasures such as COVID19 test kits. However, there were significant supply chain shortages in March 2020, and throughout the early months of the pandemic. As such, conscious decisions

15

were made to allocate and preserve scarce resources. *See id.* at 2 (3/5/20: "The supply chain for masks and gowns continues to be strained. . . . N95 masks need to be saved for when they are needed most, so should only be used according to CMS guidelines. Centers should prioritize N95s for when they have high risk patients or a diagnosed COVID19 case.").

54.     As such, it is evident -- even from the face of the Complaint -- that Defendant implemented infection control protocols to prevent the spread of COVID-19, making conscious decisions relating to the administration and use of covered countermeasures. Thus, the alleged actions and omissions of alleged willful misconduct -- relating to and arising from how the Facility administered its COVID-19 countermeasure program and the manner in which is used and allocated countermeasures at the Facility --  fall squarely within the scope of the PREP Act  and are thus completely preempted by the PREP Act, especially in view of the "willful misconduct" claims in the Complaint.  See *Maglioli,* 16 F.4th at 401.

55.     In addressing the issue of complete preemption, the Third Circuit explained that courts must "look beyond the [plaintiff's] claims," to determine whether the allegations "fall within the scope of the PREP Act's cause of action -- that is, whether the claims could have been brought under that section." *Maglioli*, 16 F.4th at 411 (quoting *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 446 (3d Cir. 2003)).

56.     Here, Plaintiff's Complaint asserts a specific cause of action for "Willful and Wanton Misconduct" alleging that the Facility willfully brought about harm to the Decedent. Compl. ¶ 53.

57.     Unlike in *Maglioli*, this Count does not simply assert generic "language for a punitive damages request." *Cf. Maglioli*, 16 F.4th at 411. Rather, Plaintiff includes a specific causes of action entitled willful misconduct, and their claims are supported by specific factual allegations that the Facility intentionally with conscious disregard failed to comply with policies and procedures of the Public Health and Center for Medicare and Medicaid Services in how they used and administered countermeasures to combat the virus at the Facility.  *See* Compl. ¶ 28(l). As alleged, the Complaint cites the Facility's purported knowing defiance of CMS guidance related to countermeasure use in the prevention of COVID-19.

58.     For example, the Complaint specifically pleads that:

> Regarding DEFENDANT's breaches of duty outlined in paragraph 28, they were done with *utter indifference to or conscious disregard* for NADINE's safety and well-being. Compl. ¶ 45. (emphasis added).

59.     Under the PREP Act, the term "willful misconduct" is defined as an "act or omission that is taken - (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A) (emphasis added). The Act states that this criteria "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form of recklessness." Id. § 247d-6d(c)(1)(B).

60.     The Facility denies Plaintiff's allegations and characterizations of the facts. Nevertheless, reading the Complaint as pled and, in its entirety, Plaintiff has asserted allegations and claims that plainly meet the definition of "willful misconduct" under the

17

PREP Act, such that Plaintiff "could have brought their claims under the Act's cause of action for willful misconduct." *Maglioli*, 16 F.4th at 410.

61.     As such, the claims are subject to complete preemption under the PREP Act, such that removal is proper under 28 U.S.C. § 1441(a)10 .

62.     And this Court has supplemental jurisdiction over any remaining state law tort claims arising from Decedent's residency at the Facility. These claims "are so related to claims in [this] action within . . . [the] original jurisdiction [of this Court] that they form part of the same case or controversy." *See* 28 U.S.C. § 1367.

63.     In this regard, when a single federal claim confers federal question jurisdiction, the district court may exercise supplemental jurisdiction over other related state law claims that "derive from a common nucleus of operative facts." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 786 (3d Cir. 1995).

64.     Here, all of Plaintiff's claims arise from care provided during the Decedent's residency at the Facility. The Complaint asserts similar allegations of misconduct across all counts; and similar evidence and factual questions will be relevant to all claims. As such, this Court may properly exercise subject matter jurisdiction over the entirety of Plaintiff's Amended Complaint. Under 28 U.S.C. § 1367(a), "courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Two claims form part of the same case or controversy if they "'derive from a common nucleus of operative fact.'" *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The common nucleus

18

of operative fact requirement is satisfied by a "loose connection between the claims." *McCoy*, 760 F.3d at 683.

## V.  FEDERAL OFFICER REMOVAL JURISDICTION ALSO EXISTS HERE.

65.  Through 28 U.S.C. §1442(a), Congress recognized that when private entities are enlisted to aid the federal government in fulfilling basic governmental functions, as was the case here during this national public health emergency, those private entities are entitled to a hearing in federal court free of the risks of potential anti-federal bias in state court. §1442(a); *Rodas v. Seidlin*, 656 F.3d 610 (7th Cir. 2011).

66.  By way of 28 U.S.C. §1442(a)(1), Congress permits removal when a defendant is sued for acts undertaken at the direction of a Federal Officer. This is to be broadly construed in favor of a federal forum. *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def Ass'n of Phila.*, 790 F.3d 457 (3rd Cir. 2015); *Magnin*, 91 F.3d at 1427.

67.  As a program planner (defined in ¶ 31 herein) approved and directed by HHS's Authorities Having Jurisdiction ("AHJ") and federal contractors to administer or use COVID-19 countermeasures and to manage and operate a countermeasure program and countermeasure facility, and as a member of the nation's critical healthcare infrastructure under the direction and control of HHS, the Facility was enlisted by Congress and by HHS as a federal officer and instrumentality. 42 U.S.C. §5195c; §247d-6d(i)(6); HHS Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act (October 23, 2020) (HHS Response Letter, supra).

19

(https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO4.2_Updated_FINAL_SIGNED_10.23.20-2.pdf)

68.     The PREP Act expressly anticipates the use of, and federal protections for, private federal officers in times of public health emergency. 42 U.S.C. §§247d-6d(d)(1), (f). In subsection (f) of the PREP Act, Congress provides that federal "agencies" (such as HHS), "instrumentalities" (such as AHJs, the Illinois Department of Public Health ("IDPH") healthcare infrastructure participants, and senior-assisted facilities), and "officers" (such as AHJs, IDPH, and program planners) will keep federal statutory protections, such as 28 U.S.C. §1442(a), regardless of any provision of the PREP Act:

> Nothing in this section shall be construed to abrogate or limit any right, remedy, or authority that the United States or any agency thereof may possess under any other provision of law or to waive sovereign immunity or to abrogate or *limit any defense or protection available to the United States or its agencies, instrumentalities, officers, or employees under any other law,* including any provision of chapter 171 of Title 28 (relating to tort claims procedure).

42 U.S.C. §247d-6d(f) (emphases added). Subsection (f) refers three times to types of legal protections for PREP Act federal officers, such as the Facility, by citing to "other provisions of law," "any defense or protection", and "any other law," which would include the protection of 28 U.S.C. §1442(a).

69.     Subsection (f)'s assurance of statutory protections to federal instrumentalities and officers is expressly incorporated into subsection (d)(1) of the PREP Act:

> *Subject to subsection (f)*, the sole exception to the immunity from suit and liability of covered persons… shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct….

20

42 U.S.C. §247d-6d(d)(1) (emphases added).

70. By incorporating subsection (f) into subsection (d)(1), Congress makes clear that the creation of the PREP Act's "exclusive Federal cause of action" is not abrogating or limiting "any right," "provision of law," "defense or protection," or "other law," such as 28 U.S.C. §1442, that is bestowed upon an instrumentality or officer of one of the federal government's agencies.

71. To remove a case under § 1442(a)(1), the moving party "must establish that he *is* a federal official or is 'acting under' such an official" and assert a "federal defense to the claim." *Venezia*, 16 F.3d at 211-12.

72. The moving party must also show that the claim "depends on the defendant's following the directions issued by that federal officer." *Pollitt v. Healthcare Service Corp.*, 558 F.3d 615, 616 (7th Cir. 2009). The United States District Court of the Northern District of Illinois has derived a three-part test from the Seventh Circuit Court of Appeal's guidelines to remove a case under § 1442(a)(1) - namely, a defendant must establish that: "(1) it is a 'person' within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning there is a nexus or causal connections between plaintiff's claims and its actions; and (3) it can assert a colorable federal defense to state-law liability." *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1003 (N.D.Ill. 2007). *See also Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 989 (C.D. Ill. 2011).

73. The Facility meets the three-pronged test for Federal Officer Removal. *Pollitt v. Healthcare Service Corp.*, 558 F.3d 615, 616 (7th Cir. 2009). First, the Facility is a person "acting under" an agency or federal officer within the meaning of §1442(a)(1);

*Pollit,* 558 F. 3d at 661. Second, the Facility performed the actions for which it is being sued under color of federal office. *Id.* And, third, the Facility raises a colorable defense. *Id.*

74.     The Facility is defined as a "person" by the PREP Act. §247d-6d(i)(5) ("person" includes a corporation).

75.     The second prong of the federal officer removal test is also met. *Pollitt*, 558 F. 3d at 661, and *Ellis*, 789 F. Supp. 2d at 989. To satisfy the "acting under" requirement, "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Watson*, 551 U.S. at 152.

76.     Here, the federal government could not have built, staffed and resourced congregate housing isolation and quarantining units across the country for vulnerable senior citizens in the time that was needed to face the COVID-19 pandemic. In order to provide its "whole-of-nation" response, the federal government, led by HHS, needed private senior living communities that were state licensed healthcare facilities to follow its instruction and to do the government's national security work of preventing and mitigating the spread of a highly communicable disease. *See* HHS Response letter, *supra* (declaring senior living communities to be HHS "program planners").[3]

---

[3] HHS identified "healthcare companies," like Defendant, as a subset of all potential program planners. *See* Advisory Opinion 20-04, 1. While HHS "re-emphasizes the breadth of PREP Act immunity" for potential program planners and qualified persons otherwise administering or using countermeasures, it notes that "[s]uch entities are not limited to healthcare professionals" and distinguishes **"healthcare companies that are part of a government response to the COVID-19 pandemic."**

77.    Here, the very conduct directed by HHS is the conduct of PPE and test administration,COVID-19 infection disease control, and the management and operation of a countermeasure program and facility of which Plaintiff complains. Compl. ¶¶ 25, 28(l).

78.    The Secretary of HHS bolsters federal, state, and local cooperation with the private sector in times of national health crisis by providing immunity to those program planners who are "authorized in accordance with the public health and medical emergency response of the Authorities Having Jurisdiction [AHJ]...to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures...." Declaration, 85 Fed. Reg. at 15,200; **Exhibit 3** *pp 3-7.*

79.    The PREP Act extends its statutory protections to those working as part of the nation's critical healthcare infrastructure with and under the directive of AHJs, such as Defendant.[4]

80.     AHJs include federal and state agencies such as: HHS, FDA, CMS, CDC, IDPH and the Cook County Health Department, all directing the Defendant here. Program planners, such as Defendant are to be afforded the statutory protections of an exclusive federal forum, an exclusive federal cause of action and immunities from all other suit and liability. §§247d-6d(a)(1), (d)(1), (e)(1).

---

[4] *See also* 42 U.S.C. §5195c, Critical Infrastructure Protection Act; Presidential Policy Directive 21 ("Directive 21") - Critical Infrastructure Security and Resilience, The White House (Feb. 12, 2013); Executive Order ("EO") 13944, 85 Fed. Reg. 49,929, 49,933 (Aug. 6, 2020), *citing* Directive 21; Cybersecurity & Infrastructure Security Agency, Healthcare and Public Health Sector at https://www.cisa.gov/healthcare-and-public-health-sector. HHS heads the national healthcare infrastructure sector. *Id. See also,* Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, available at hhs.gov/guidance/sites/default/files/hhs-guidancedocuments/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-finalhhs-web_2.pdf.

81.     As an Illinois licensed assisted living facility, the IDPH, as an AHJ and federal contractor, oversees, inspects and controls the Facility during the pandemic.

82.     These HHS, CMS and AHJ directives and guidance created "strong government intervention" which went beyond the "mere auspices of federal direction" due to the unprecedented pandemic. *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N. D. Cal. 1992).

83.     Plaintiff acknowledges that HHS and its AHJs gave specific direction and controlling enforcement to the Facility through IDPH and CMS. *See, e.g.,* Compl. ¶ 26 (alleging Defendant failed to follow guidelines issued by IDPH and the CMS. *See also* AO 20-01, pp. 2, 6 (discussing the role of state AHJs and the PREP Act protection inuring to the benefit of those controlled and directed by state AHJs).

84.     Defendant also satisfies the third prong of the test for the federal officer removal statute, 28 U.S.C.S. § 1442(a)(1), in that it has "a colorable federal defense." *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 987 (C.D. Ill. 2011). The test is met by virtue of the Facility's "colorable" defenses of immunity, defensive preemption, and failure to exhaust administrative remedies under the PREP Act,.

85.     These defenses need not be "clearly sustainable" as the purpose for the removal statute is to secure that the validity of the defense may be tried in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

## CONCLUSION

86.     Every cause of action in the Complaint arises out of or relates to the administration and use of "covered countermeasures" under the PREP Act. As such, Plaintiff's claims "aris[e] under" federal law within the meaning of 28 U.S.C. § 1331, because Plaintiff's state-law claims are completely preempted by the PREP Act and necessarily involve substantial and disputed questions of federal law within the meaning of *Grable*. Further, Plaintiff, as master of her own Complaint, asserted willful misconduct claims as defined under the PREP Act that explicitly require federal subject matter jurisdiction. In addition, Defendant was a person acting under federal officers within the meaning of 28 U.S.C. § 1442(a)(l) and is, therefore, entitled to remove this case to a federal district court to assert a federal defense.

87.     By filing this Notice of Removal, Defendant does not waive any defenses, including without limitation, lack of personal jurisdiction, improper venue or forum, all defenses specified in FRCP Rule 12, or any other defense.

88.     A Notice of Filing of Notice of Removal will be filed forthwith in the Circuit Court of Cook County, Illinois, with copies served on counsel of record, pursuant to 28 U.S.C. § 1446(a) and (d).

WHEREFORE, Defendant, BLUE ISLAND SLF, LLC d/b/a PRAIRIE GREEN AT FAY'S POINT, respectfully requests that this action be duly removed to this Court, and that it proceeds herein.

127630538v.1

CARDEN & TRACY

_/s/ Johanna L. Tracy_
Attorneys for Defendant,
BLUE ISLAND SLF, LLC d/b/a PRAIRIE GREEN
AT FAY'S POINT

Johanna L. Tracy – ARDC #6278612
Ruwan C. Perera – ARDC #6283731
Michael Shacter – ARDC #6291970
**CARDEN & TRACY**
30 North LaSalle Street, Suite 2200
Chicago, Illinois 60602
(312) 345-7250
Email: jtracy@ct-trial.com
            rperera@ct-trial.com
            mshacter@ct-trial.com

26

127630538v.1